IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JAMES GERALD HOLMES | : | CIVIL ACTION |
| v. | : | No. 12-6245 |
| WARDEN ALGARIN, et al. | : | |

# MEMORANDUM

**Juan R. Sánchez, J.**                                                                                                             September 4, 2013

Pro se Plaintiff James Gerald Holmes brings this suit pursuant to 42 U.S.C. § 1983 alleging due process violations by several officials and employees of the Montgomery County Correctional Facility (MCCF) and by PrimeCare Medical, Inc. (PrimeCare), the medical services provider at MCCF, while he was a pretrial detainee at MCCF. Holmes has named as Defendants MCCF Warden Algarin, Assistant Warden Frey, Sergeant (Sgt.) Berger, Correctional Officer (C.O.) Scullin, Social Worker Bucci, Lieutenant (Lt.) Bates, MCCF Board of Inspectors President McFarland, Lt. Appel, and Social Worker Ianozi (the County Defendants), as well as PrimeCare. Holmes alleges Defendants violated his due process rights by (1) failing to protect him and placing him in unsafe conditions; (2) denying him medical treatment; (3) denying access to and interfering with the prison grievance process; and (4) delaying his parole. The County Defendants and PrimeCare have both filed motions to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motions to dismiss will be granted, and Holmes will be granted leave to file a second amended complaint.

# FACTS[1]

In October 2007, Holmes was housed at MCCF pending trial. On October 7, 2012, C.O. Scullin allowed Holmes and other unidentified inmates "out [to get their] morning meal trays

---

[1] In evaluating the motions to dismiss, the Court accepts the factual allegations in Holmes's Amended Complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

without any correctional officer being present." Am. Compl. 4. Another inmate, who had already been convicted and was serving a 16-year sentence, took Holmes's tray without his permission. When Holmes notified the C.O. in the control area,[2] the C.O. told Holmes he could not have a second tray and "to deal with it." *Id.* The inmate who took Holmes's tray told Holmes to "stop snitching," and when Holmes attempted to retrieve his tray, the inmate began repeatedly hitting Holmes with the tray and bit Holmes. *Id.* The inmate who struck and bit Holmes is a former drug user who had Hepatitis C. Holmes alleges C.O. Scullin did nothing during the altercation; however, it is unclear from the Amended Complaint whether Scullin was present during the fight.

After the incident, Sgt. Berger conducted an investigation. Holmes was then escorted to the Restricted Housing Unit (RHU) without being seen by medical personnel. On October 11, 2012, Social Worker Bucci conducted a hearing on misconduct charges brought against Holmes as a result of the fight. Holmes could not present witnesses because the hearing was held on a day when prison inspections were taking place. Following the hearing, Holmes was held in the RHU for 16 additional days. Holmes appealed this result to Assistant Warden Frey, but the appeal was not resolved before Holmes returned to the general population. While in the RHU, Holmes reported daily to several nurses that he was suffering from headaches and was concerned about the bite he received, but he was never taken to the medical department despite placing several "sick calls." *Id.* At some point while he was in the RHU, Holmes spoke with a mental health counselor who took notes regarding his claims and "referred it to the Doctor," but he "never received medical treatment for [his] injuries sustained from being assaulted." *Id.* at 6. These injuries continue to cause him head, neck, and upper back pain.

---

[2] The Amended Complaint does not identify this unnamed C.O., but it is clear the C.O. is not one of the Defendants.

Holmes wrote to Warden Algarin and Board President McFarland on October 18, 2012, complaining about not receiving a medical evaluation but he did not receive a response. In his letter, Holmes noted his failure to receive immediate medical attention after the physical altercation violated Section 33 of the MCCF Inmate Guidelines Handbook (Guidelines), which provides "[w]hen inmates engage in a fight, the participants shall be separated at once, seen by the medical department, and classified according to institutional classification policy." *Id.* at 8. Holmes also complained about the procedures in his disciplinary hearing in his letter to Algarin and McFarland, arguing that holding the hearing on an inspection day violated Section 37 of the Guidelines, which provides, in relevant part, "[h]earings will be held no less than one day nor more than four working days, excluding monthly inspection days . . . after the inmate has been informed, in writing, of the specific violation of which he/she is accused." *Id.* at 10.

Holmes subsequently conferred with Lt. Bates, Lt. Appel, and Bucci about possibly filing a grievance challenging the procedures in his disciplinary hearing. These Defendants told Holmes he could not file a grievance over disciplinary hearing procedures, despite the fact the grievance procedural rules permit such challenges when the disciplinary hearing was conducted improperly. Holmes was released from the RHU on October 27, 2012.

On November 2, 2012, Social Worker Ianozi submitted a parole plan for Holmes, which "hinder[ed] [Holmes's] release date." *Id.* at 7. Holmes's initial parole date was November 2, 2012, but he was not released until November 9, 2012. Holmes alleges Ianozi purposely interfered with his release date. Holmes also claims he "was denied a grievance" regarding submission of the parole plan, and, according to Holmes, "Mr. Ianozi purposely told me this." *Id.* Holmes further alleges the submission of the parole plan was in retaliation for his filing the instant lawsuit.

Holmes initiated this lawsuit on November 5, 2012, by filing an application to proceed *in forma pauperis* along with his Complaint. On November 8, 2012, Holmes filed an Amended Complaint, adding claims against Ianozi. Although Holmes does not clearly enumerate his separate claims or identify the particular Defendant or Defendants responsible for each alleged civil rights violation, the Court construes Holmes's Amended Complaint as asserting the following claims: (1) a violation of his due process rights by various County Defendants for failing to protect him from the inmate who assaulted him; (2) an unconstitutional denial of his right to medical care by various County Defendants and PrimeCare; (3) a due process violation by Bucci for effectively denying Holmes's right to have inmate witnesses testify at his disciplinary hearing by holding the hearing during prison inspections; (4) a due process violation by various County Defendants for denying him the right to file a grievance concerning the disciplinary hearing procedures; (5) a violation of his due process rights by Ianozi for delaying his parole; and (6) retaliation by Ianozi against Holmes for filing the instant lawsuit.

**DISCUSSION**

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In evaluating a Rule 12(b)(6) motion, a court first must separate the legal and factual elements of the plaintiff's claims. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). The court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Id*. at 210-11.

The court must then "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

With regards to Holmes's first claim, failure-to-protect claims by pretrial detainees, although analyzed under the Fourteenth Amendment's Due Process Clause, are governed by the same Eighth Amendment standard that applies to such claims by sentenced inmates. *See Paulino v. Burlington Cnty. Jail*, 438 F. App'x 106, 109 (3d Cir. 2011) (finding "deliberate indifference" is the proper standard for both prisoners and pretrial detainees) (citing *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1024 (3d Cir. 1991) and *Calozzo v. Koreman*, 581 F.3d 63, 71 (2d Cir. 2009))). To state a claim for a due process violation for failing to protect a pretrial detainee from an assault by a fellow inmate, a plaintiff must allege "(1) he is 'incarcerated under conditions posing a substantial risk of serious harm'; and (2) the prison official acted with 'deliberate indifference' to his health and safety.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Deliberate indifference to health and safety is characterized by "something more than mere negligence," but "is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Deliberate indifference is equivalent to recklessly disregarding a substantial risk of serious harm. *Id.* at 836. "The knowledge element of deliberate indifference is subjective, not objective knowledge, meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Holmes alleges the County Defendants failed to protect him. Specifically, Holmes asserts he was placed at an unreasonable risk of harm by the failure of the County Defendants to provide supervision at the time of the fight and by housing a sentenced prisoner (the inmate who

assaulted him) among pretrial detainees like Holmes. As to his lack of supervision theory, Holmes has not alleged any facts suggesting any Defendant believed, or even had a reason to believe, Holmes was in danger of being assaulted by the inmate who attacked him or anyone else. The Amended Complaint provides no basis to infer the fight was anything other than an isolated incident, and there is likewise no allegation the fight was precipitated by any threat of which Defendants were aware. *See Riley v. Jeffes*, 777 F.2d 143, 147 (3d Cir. 1985) ("A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." (quotation omitted)). Although Holmes alleges he told an unnamed "C.O. in the control area" the other inmate had stolen his tray, and the C.O. told him to "deal with it," Holmes does not allege he told Scullin or any other Defendant about his tray being taken. In addition to his claim that Scullin failed to supervise him, Holmes also alleges Scullin did nothing during the altercation, but fails to state any facts suggesting Scullin was even aware of the altercation; rather, he states the fracas occurred because Scullin allowed the inmates "out for morning meal trays without any correctional officer being present." Am. Compl. 4. Holmes, therefore, has failed to allege facts to state a plausible failure-to-protect claim based on a lack of supervision.

With regard to Holmes's theory that the County Defendants were deliberately indifferent for housing pretrial detainees and sentenced inmates together, Holmes does not allege any facts to suggest sentenced prisoners in general, or the sentenced prisoners at MCCF, posed a substantial risk of serious harm to Holmes or other pretrial detainees. Moreover, insofar as Holmes alleges he has some constitutionally protected interested in being housed apart from sentenced prisoners, such claim fails as a matter of law. *See Hoover v. Watson*, 886 F. Supp. 410, 417 (D. Del. 1995) (finding no authority "to support the assertion that pre-trial detainees

who are being lawfully held pending a trial have a liberty interest in being housed separately from sentenced inmates"), *aff'd*, 74 F.3d 1226 (3d Cir. 1995). Holmes's failure to protect claim will therefore be dismissed.

Holmes has also failed to state a claim for denial of medical treatment. A claim by a pretrial detainee for denial of medical treatment is analyzed under the Fourteenth Amendment, but courts apply the same Eighth Amendment standard that applies to such claims by sentenced prisoners. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (finding no reason to apply a different standard to a pretrial detainee than the standard applied to a prisoner's claims of inadequate medical care under the Eighth Amendment). To state a claim for inadequate medical care, Holmes must allege (1) a serious medical need and (2) conduct by Defendants that "indicate[s] deliberate indifference to that need." *Id.* A medical need is serious if it "has been diagnosed by a physician as requiring treatment or . . . is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). A medical need is also serious where the denial of treatment would result in "the unnecessary and wanton infliction of pain," *Estelle v. Gamble*, 429 U.S. 97, 103 (1976), or "a life-long handicap or permanent loss," *Lanzaro*, 834 F.2d at 347.

The Third Circuit has recognized a number of situations in which deliberate indifference may be found in the context of medical treatment (or the lack thereof), "including where prison officials deny reasonable requests for medical treatment and such denial exposes the inmate to undue suffering or the threat of tangible residual injury; where knowledge of the need for medical care is accompanied by the intentional refusal to provide that care; and when prison authorities prevent an inmate from receiving recommended treatment for serious medical needs

7

or deny access to a physician capable of evaluating the need for such treatment." *Velasquez v. DiGuglielmo*, No. 09-517, 2012 WL 4510775, at *16 (E.D. Pa. Sept. 28, 2012) (quoting *Lanzaro*, 834 F.2d at 346-47) (internal quotation marks, alterations, and citations omitted). Allegations of malpractice or "mere disagreement as to the proper medical treatment," are insufficient to state a claim for denial of medical treatment. *Lanzaro*, 834 F.2d at 346.

Holmes alleges the fight left him with head, neck, and back pain and a bite from a prisoner whom Holmes believes had Hepatitis C. He also claims he never received treatment despite his daily complaints to nurses about his ailments. These allegations are insufficient to state a plausible claim under the Fourteenth Amendment as to the County Defendants. First, Holmes's alleged injuries do not appear to rise to the level of a serious medical need. He fails to allege injuries that are so obvious "a lay person would easily recognize the necessity for a doctor's attention," *Lanzaro*, 834 F.2d at 347, or so serious the denial of treatment would result in "a life-long handicap or permanent loss," *id*, or "the unnecessary and wanton infliction of pain," *Estelle*, 429 U.S. at 103. Holmes's general complaints of head, neck and back pain do not rise to the level of a serious medical need, while his complaint of a bite lacks any stated facts regarding the nature of the bite, such as if the bite broke the skin, whether there was any blood, or if the bite looked infected. Thus, as currently pleaded, Holmes's allegations of head, neck and back pain and a bite do not state a serious medical need.

Second, even if his injuries did present a serious medical need, Holmes has not sufficiently alleged any County Defendant acted with deliberate indifference to his medical needs. Although Holmes alleges he was never taken to the medical department and did not receive any treatment, he admits he saw nurses on a daily basis and informed them of his health issues. "If a prisoner is under the care of medical experts . . . a non-medical prison official will

generally be justified in believing that the prisoner is in capable hands," and cannot be said to have been deliberately indifferent to the prisoner's medical needs. *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (finding prison personnel cannot be considered deliberately indifferent "simply because they failed to respond directly to the medical complaints of a prisoner," where the prisoner is in the care of medical personnel). Holmes also saw a mental health counselor who referred his complaints to a doctor. Thus, although his ailments were not treated, he has not alleged a denial of a reasonable request for treatment that exposed him to undue suffering or residual injury, an intentional refusal to provide care, or a denial of access to healthcare workers who could evaluate his complaints.

As for PrimeCare, the company contracted to provide medical services at MCCF, Holmes has not alleged facts to hold it liable under § 1983. The only allegations concerning PrimeCare are that its nurses and other staff failed to treat Holmes's injuries. "A private company contracted by a prison to provide health care for inmates, however, cannot be held liable on a *respondeat superior* theory; rather, it can only be held liable for constitutional violations if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs." *Henry v. Buskirk*, No. 08-1348, 2011 WL 767540, at *4 (E.D. Pa. Feb. 24, 2011) (citing *Natale*, 318 F.3d at 583-84 and *Monell v. N.Y. City Dep't of Soc. Servs.*, 436 U.S. 658, 690-92 (1978)). Holmes's Complaint, even liberally construed, fails to allege any policy or custom maintained by PrimeCare showing deliberate indifference to prisoners' serious medical needs. For these reasons, Holmes has failed to state a claim for denial of medical treatment, and this claim will be dismissed.

9

Holmes next claims the County Defendants violated his due process rights by denying him the right to present witnesses at his disciplinary hearing, allegedly in violation of Section 37 of the Guidelines, which provides "the inmate may present evidence and/or call witnesses in his/her defense within reason." Am. Compl. 10. Holmes's Amended Complaint fails to state a claim because Holmes does not have a liberty interest in either the rules and regulations contained within the Guidelines allowing him to present witnesses at his disciplinary hearing or in being kept out of the RHU. Insofar as Holmes asserts the prison's failure to comply with its own procedures and policies laid out in the Guidelines violated his due process rights, "state procedures in themselves, do not confer a liberty interest protected by the due process clause." *Thomas v. Rosemeyer*, 199 F. App'x 195, 198 (3d Cir. 2006); *see also Woods v. Abrams*, No. 06-757, 2007 WL 2852525, at *18 (W.D. Pa. Sept. 27, 2007) (noting neither federal nor state regulations in and of themselves create a liberty interest in procedural rules). Furthermore, due process protection in the prison context is "limited to those situations where the deprivation rises to the level of an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Thomas*, 199 F. App'x at 197 (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)). Confinement in the RHU for a period of 20 days is not an atypical or significant hardship. *Id*. (finding 270 days in the RHU was not an atypical or significant hardship); *Griffin v. Vaughn*, 112 F.3d 703, 706 n.2 (3d Cir. 1997) (finding a prisoner's 15 month confinement in the RHU did not implicate a liberty interest). Accordingly, Holmes has failed to state a claim that his due process rights were violated because the County Defendants failed to adhere to the Guidelines, and this claim will be dismissed.

Similarly, Holmes has failed to state a claim based on the actions of County Defendant's preventing him from filing a grievance. The Third Circuit Court of Appeals has held

"[p]risoners do not have a constitutional right to prison grievance procedures." *Freeman v. Dep't of Corr.*, 447 F. App'x 385, 387 (3d Cir. 2011); *see also Massy v. Helman*, 259 F.3d 641, 647 (7th Cir. 2001) (noting the courts of appeals that have dealt with this issue have found "the existence of a prison grievance procedure confers no liberty interest on a prisoner"). Neither the failure of Algarin and McFarland to respond to Holmes's complaint regarding his medical care and disciplinary hearing, nor the actions of Lt. Bates, Lt. Appel, and Bucci telling Holmes he could not file a grievance regarding the disciplinary hearing, amount to a violation of due process. *See Allen v. Warden of Dauphin Cnty. Jail*, No. 07-1720, 2008 WL 4452662, at *5 (M.D. Pa. Sept. 29, 2008) (holding a prison official's refusal to provide grievance forms or respond to an inmate's complaint does not constitute a violation of due process). Thus, Holmes's claim that the County Defendants did not respond to his complaints or allow him to file a grievance, fails to state a claim under § 1983 as these allegations do not implicate Holmes's due process rights, and this claim will be dismissed.

Finally, Holmes fails to state a claim against social worker Ianozi based on the allegation that Ianozi purposely hindered Holmes's release from prison by submitting a parole plan. Holmes's allegation that Ianozi interfered with his parole is insufficient to state a § 1983 claim because a prisoner does not have a protected due process interest in the grant of parole. *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 9-10 (1979). "That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained." *Id.* at 11. Moreover, Holmes has pleaded no facts to suggest that even if he had a liberty interest in parole, Ianozi behaved in such a way as to delay Holmes's parole. Holmes states in his Amended Complaint that he was granted parole on November 9, 2012, a mere one week after he claims Ianozi purposely delayed his release. Because there are no pleaded facts

suggesting Holmes's parole was unnecessarily delayed, and moreover, because Holmes has no liberty interest in parole, this due process claim fails and will be dismissed.

Holmes also alleges Ianozi purposefully retaliated against Holmes for filing the instant lawsuit. Even though Holmes has no liberty interest in parole, his claim that Ianozi acted in retaliation against him by interfering with his parole may be actionable. *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000) (finding retaliation may be actionable, "even when the retaliatory action does not involve a liberty interest"). However, Holmes's has pleaded no facts from which to infer Ianozi had any knowledge of the lawsuit and acted in order to retaliate against him. Because there are no facts suggesting Ianozi retaliated against Holmes, this claim fails and will be dismissed.

When dismissing a pro se civil rights complaint, a district court must provide the plaintiff leave to amend his complaint, "even if the plaintiff does not request it, unless amendment would be futile or leave to amend is not warranted for some other reason." *Tate v. Morris Cnty. Prosecutors Office*, 284 F. App'x 877, 879 (3d Cir. 2008). Futility means that, even if the pleading were amended, it would fail to state a claim upon which relief could be granted. *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000). Amendment would not be futile for Holmes's claims of failure to protect, denial of medical treatment, and retaliation; therefore, these claims will be dismissed without prejudice and Holmes will be given until October 8, 2013, to file a second amended complaint which cures the deficiencies set forth above. Failure to file the second amended complaint within the time permitted will result in dismissal of the claims with prejudice. Holmes's claim of due process violations for (1) denying his right to present witnesses at his hearing, (2) denying his right to file a grievance, and (3) delaying his parole fail as a matter of law and amendment would not cure these deficiencies. Accordingly, these claims

will be dismissed without leave to amend because any attempt to amend these claims would be futile. As set forth above, Holmes has no constitutional right to a prison grievance process and no liberty interest in his ability to present witnesses at his disciplinary hearing or in receiving parole. Accordingly, the motion to dismiss will be granted and these claims dismissed with prejudice.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez, J.